DOWNEY, Judge.
Appellees, Kenneth F. Tworoger and the law firm of Tworoger & Sader, P.A., sued appellant, Atlantic National Bank, for malicious prosecution and abuse of process. The cause of action allegedly arose out of two mortgage foreclosure suits naming ap-pellees among the defendants. A jury returned a verdict in the present case in favor of Kenneth Tworoger on both the malicious prosecution and abuse of process counts, and in favor of the law firm on the abuse of process count only. Appellant has perfected this appeal from a judgment on the verdict and we affirm, finding no demonstration of reversible error.
George Tworoger, the patriarch of the Tworoger family, owned a business called Expert Dairy. George and Expert Dairy had a long-standing banking relationship with appellant, Atlantic National Bank (now known as First Union National Bank of Florida). In early 1983, George Tworo-ger and Expert Dairy had over $332,000 in outstanding loans with the bank, of which only about $44,000 was secured by mortgages on certain real property, referred to as the “Turnpike Sites Property.”
George’s son, Tom Tworoger, owned a business known as Kenworth Truck of South Florida, Inc., which operated from the Turnpike Sites Property. Tom held an option to purchase said property under a recorded lease, which option expired in December 1983. Appellee, Kenneth Tworo-ger, a lawyer, represented his brother Tom and Kenworth Truck of South Florida, Inc., in matters pertaining to the lease and option on the Turnpike Sites Property. As a result of this representation, appellee, Tworoger & Sader, P.A., held a second mortgage on the Turnpike Sites Property, which was to be paid when Tom Tworoger exercised the option to purchase.
During 1982 and 1983, George and Expert Dairy began experiencing financial difficulties and appellant became concerned about the inadequacy of the collateral it held as security for the George Tworo-ger/Expert Dairy loans. Thereupon, appellant’s counsel suggested that appellant try to improve its collateral position by acquiring additional security interests from the Tworogers. In the course of these considerations and negotiations, certain bank officers made written notations in the bank’s files that described their motivations and intentions vis-a-vis the Tworoger family, such as: “Look closely at documentation before we put the screws down”; “The question to be resolved after ... [counsel] completes his review is how we can improve our collateral position and what will be the cost ... to obtain their cooperation”; and “Collateral Agreement— doesn’t carry much weight. Continue suit as an ‘equitable interest’ in Turnpike Sites even if we accept pmts. This will place cloud on real estate so that Tom [Tworo-ger] can’t use it for anything.” Appellant did obtain a collateral agreement that purported to give it some further security interest in the Turnpike Sites Property, although the evidence reflects that neither counsel nor appellant really believed that it strengthened appellant’s position. Nevertheless, appellees’ claim is that this agreement was used maliciously by appellant to include appellees and other Tworoger family members as defendants in the mortgage foreclosure suits and to force them to pay off the George Tworoger/Expert Dairy debt, a debt not truly their obligation, to appellant. Furthermore, the evidence indicates that appellant was extremely reluctant to advise appellees, as second mortgagees, of the payoff amounts needed to retire appellant’s first mortgage obligation, and that appellant was trying to force the *567 payment of all the varied George Tworo-ger/Expert Dairy obligations before it would satisfy the first mortgage.
At trial, appellees were successful in admitting into evidence the various notations made by bank officers, as well as the statement of the president of the bank, to the effect that appellant considered the Tworo-ger family as a single entity and appellant assumed that the problem of any individual was the entire family’s problem.
Initially, appellant contends that the trial court erred in denying its motion for a directed verdict based upon its election of remedies defense, since appellees sought attorney’s fees and costs in the foreclosure actions and cannot now seek them as damages in the present cases.
It appears that the trial court did award appellees attorney’s fees in the prior litigation pursuant to section 701.04, Florida Statutes, but that award was reversed on appeal in Atlantic National Bank v. Tworoger, 448 So.2d 616 (Fla. 3d DCA 1984)[1]. Therefore, in the present case appellees claimed as an element of their damages the value of the services they rendered in defending themselves in the foreclosure suits, which they contend were malicious prosecutions. The trial court in this case ruled that the judgment for fees and costs in the original suits was a nullity, a conclusion we hold was correct, and thus the election of remedies defense asserted by appellant was inapplicable. In Williams v. Robineau, 124 Fla. 422, 168 So. 644 (1936), the Supreme Court of Florida set forth the rules that we deem applicable in the present case vis-a-vis the election of remedies. There the court said:
An election of remedies presupposes a right to elect. It is a choice shown by an overt act between two inconsistent rights, either of which may be asserted at the will of the chooser alone. It is generally conceded that to be conclusive it must be efficacious to some extent. A position taken which does not injure the opposite party is not an election which precludes a change or raises an estoppel. The election is matured when the rights of the parties have been materially affected to the advantage of one or the disadvantage of the other.
[[Image here]]
An attempted exercise of an assumed remedy which turns out to be abortive will not preclude one from resorting to another.
168 So. at 646-647.
Again, in Perry v. Benson, 94 So.2d 819 (Fla.1957), the court pointed out the necessity of there being two viable remedies before the election doctrine pertains. In this regard, the court said:
But, of course, for an action to constitute “election of remedies”, there must be two or more available remedies open to plaintiff at the time he institutes the first action. Gibson v. American Ins. Co., 146 Fla. 171, 200 So. 357 [(1941)]. The remedies sought must not only be inconsistent but they must also be coexistent. If the remedy sought in the first instance does not exist at the time it is sought, then there is no election of remedies. The parties are not bound unless, at the time of the first suit, there are two remedies then available from which an election may be made. If, in the first instance, plaintiff proceeds upon an assumed remedy which does not exist at the time, and such effort proves abortive, he is not precluded from resorting to another remedy.
94 So.2d at 821.
In applying the foregoing rules to our factual situation, it must be remembered that the prior litigation involved the foreclosure of appellant’s mortgages against *568 appellees and others. The claim for an award of attorney’s fees therein by appel-lees was not based upon any contractual right, but rather on section 701.04, Florida Statutes, which provides for recovery of attorney’s fees by a debtor who pays off a mortgage indebtedness and is required to sue the mortgagee to obtain a satisfaction of the mortgage. In reversing the judgment for attorney’s fees in the prior appeal, the court essentially held that appel-lees never had a cause of action to recover attorney’s fees pursuant to section 701.04. Thus, it appears clear that, since appellees never had any claim for attorney’s fees pursuant to section 701.04, there never was an election of remedies that would preclude them from claiming as damages in this case the attorney’s fees, or equivalent, incurred in the mortgage foreclosure suit. Under such circumstances there never could have been a double recovery, preclusion of which is the purpose of the election of remedies doctrine.
Appellant next complains of several of the trial court’s evidentiary rulings that admitted testimony and documentary evidence regarding appellant’s conduct and relations with other members of the Tworo-ger family other than Kenneth. However, we believe the trial court’s rulings were correct because the evidence supports a finding that appellant treated the entire Tworoger family as “a single entity” and appellant’s internal memoranda and officers’ notes afford a basis for the jury to find elements necessary for malicious prosecution and abuse of process. As appellees contend, the evidence would warrant a finding that, over a considerable period of time, appellant conducted itself vis-a-vis the Tworogers in a fashion that would deprive appellees of the benefit of their second mortgage on the Turnpike Sites Property and/or extort payments from appellees to satisfy debts due to appellant from other Tworoger family members. Thus, the bank’s motives and intent toward individual family members cannot be sorted out and distinguished from the group.
The major portion of the verdict and judgment for appellees is made up of punitive damages. Appellant contends that the trial court erred in instructing the jury in this regard. However, the trial court gave the standard jury instruction on punitive damages and, moreover, clearly advised the jury that damages could not be awarded to appellees for injuries suffered by others who were not plaintiffs in this case. Counsel prepared a proposed instruction incorporating the standard instruction and the court’s concepts regarding damages for the injuries of others, and no objection was made thereto. Furthermore, we have considered the instructions given and believe that they adequately and fairly covered the issues of punitive damages and malice in the context of this case.
Having considered appellant’s other assignments of error and finding them to be without merit, we affirm the judgment appealed from.
WARNER, J., and WESSEL, JOHN D., Associate Judge, concur.

. The Tworoger court held that the statute was inapplicable in this case because 1) the mortgage involved predated the statute and it could not be applied retroactively, notwithstanding that the failure to satisfy the mortgage occurred after the passage of the statute; and 2) even if the mortgage had been created after the passage of the statute, attorney’s fees would not be recoverable where, as here, suit to foreclose was instituted by the mortgagee and the mortgagor's entitlement to a satisfaction was the result of a settlement of the litigation. The court held that the express predicate to recovery of fees is confined to one who, having fully paid the mortgage, is compelled to sue to obtain a satisfaction thereof.